David S. Casey, Jr. (SBN 060768)
*dcasey@cglaw.com*
Gayle M. Blatt (SBN 122048)
*gmb@cglaw.com*
Jeremy Robinson (SBN 188325)
*jrobinson@cglaw.com*
Ethan T. Litney (SBN 295603)
*elitney@cglaw.com*
Alyssa M. Williams (SBN 310987)
*awilliams@cglaw.com*
**Casey Gerry Schenk**
**Francavilla Blatt & Penfield, LLP**
110 Laurel Street
San Diego, California 92101
(619) 238-1811 phone
(619) 544-9232 fax

Attorneys for Plaintiffs

# United States District Court

## Northern District of California

| | |
|---|---|
| **Tomas Hernandez** and **Greg Robison**, on behalf of themselves and all others similarly situated, | Case No. |
| | **Class Action Complaint and Complaint for Damages** |
| Plaintiffs, | |
| | **Demand for Jury Trial** |
| v. | |
| **Samsung Electronics America, Inc.**, a New York corporation; and **Samsung Electronics Co., Ltd.**, a corporation organized under the laws of South Korea, | |
| Defendants. | |

Plaintiffs Tomas Hernandez and Greg Robison, acting on behalf of themselves and all others similarly situated, bring this action for damages and equitable relief against Defendants Samsung Electronics America, Inc. and Samsung Electronics Co., Ltd. (together, "Samsung").

**Summary**

1.      This case is brought on behalf of consumers who have purchased a range of Samsung Galaxy smartphones, detailed below. Samsung's Galaxy series—its flagship line—has been plagued with problems in recent years. A number of Galaxy models have been overheating, catching fire, and sometimes exploding dramatically. Despite continued reports of such failures, Samsung still markets and sells its Galaxy phones without disclosing any of these risks to consumers.

2.      Samsung has known its Galaxy phones are dangerous for years. Consumers have repeatedly reported in online forums posts, in YouTube videos, through complaints to Samsung directly by phone, email, and its website, and by reports to the U.S. Consumer Product Safety Commission (CPSC) that Galaxy devices were overheating, catching fire, and exploding. The first CPSC report of flames coming out of a Galaxy device was in 2011. Samsung began providing form responses to CPSC reports in 2014.

3.      Despite knowing the dangers associated with its flagship line, Samsung continues to sell its defective Galaxies without warning consumers of those dangers, releasing several new models each year.

4.      In fact, Samsung's initial approach was to hide the problem entirely. When a Galaxy S4 owner posted a YouTube video showing how his phone had been damaged by overheating in December 2013, Samsung's response came in the form of a legal release.[1] If the owner took down the video, waived *all* potential claims against Samsung, *and* agreed to a gag order, Samsung would replace his defective phone with a similar model.[2]

---

[1] https://www.youtube.com/watch?v=2QHd-_qncEU;
https://www.youtube.com/watch?v=dc4duKuPrQ0.
[2] https://pastebin.com/D3G2iKDP.

5.     Samsung placed profits before the safety of its customers, downplaying each reported fire and concealing from consumers the danger lurking in their homes and their pockets.

6.     In 2016, following the release of the Galaxy Note7, the dangers could no longer be ignored. On October 14, 2016, the U.S. Department of Transportation ("DOT") and several of its agencies issued an emergency order banning Note7's from air transportation—including shipping as cargo.[3] Samsung had to recall all Note7 devices, and ceased production of the Note7 model entirely.

7.     But, Samsung's other dangerous Galaxy phones remain in consumers' hands while consumers continue to report overheating problems. And Samsung continues to conceal the dangers from consumers even as it rolls out new Galaxy models.

8.     This chart shows which phones (the "Class Phones") are at issue in this litigation. Additional investigation may lead to the discovery of other impacted models.

| Model | Release Date |
|---|---|
| Galaxy S6 | April 2015 |
| Galaxy S6 Edge | April 2015 |
| Galaxy S6 Active | July 2015 |
| Galaxy Note5 | August 2015 |
| Galaxy S6 Edge+ | August 2015 |
| Galaxy S7 | March 2016 |
| Galaxy S7 Edge | March 2016 |
| Galaxy S7 Active | June 2016 |
| Galaxy Note7 | August 2016 |

9.     Plaintiffs Tomas Hernandez and Greg Robison, on behalf of themselves and classes of California and Maryland residents who purchased or otherwise expended money in any way for Class Phones ("Class Members") bring this action to redress Samsung's unfair business practices and fraudulent misrepresentations about its dangerous and dysfunctional flagship phone line.

10.     Plaintiffs and Class members were induced to purchase Class Phones based on deliberate omissions by Samsung in its advertising, public statements, and marketing

---

[3] DOT Press Release 127-16, "DOT Bans All Samsung Galaxy Note7 Phones from Airplanes," (Oct. 14, 2016), available at: https://www.transportation.gov/briefing-room/dot-bans-all-samsung-galaxy-note7-phones-airplanes. This caused major headaches for affected consumers as they sought to return their dangerous phones but faced limited shipping options.

information. These were material factors in inducing Plaintiffs and Class Members to purchase the Class Phones. Samsung's deceptive scheme caused many consumers worldwide to buy the Class Phones based on false claims of the phones' characteristics. Plaintiffs and Class Members would not have purchased the Class Phones or would have paid much less had they known the truth about them.

<strong><u>THE PARTIES</u></strong>

**<u>Plaintiff Tomas Hernandez</u>**

11.    Plaintiff Tomas Hernandez is a resident of Chula Vista, California. In 2015, he researched a number of possible smartphones—including the Galaxy S6, LG G4, and HTC One M9—before settling on the S6.

12.    Hernandez purchased his S6 from Verizon in August 2015 on a payment plan, which he has since paid off. Within a few weeks, he noticed it would get unusually warm to the touch. Since then, the overheating has grown worse. Hernandez's S6 sometimes gets so hot that all of his apps crash; the phone is almost always sluggish; and he has to charge the phone several times just to get through the day.

**<u>Plaintiff Greg Robison</u>**

13.    Plaintiff Greg Robison is a resident of Silver Spring, Maryland. He considered several phones when choosing a new smartphone in 2015, including the Droid Turbo by Motorola, but opted for the Samsung S6. Robison purchased his S6 on May 25, 2015 from an authorized Verizon retailer. Robison purchased the phone with an associated phone line that is under a two-year contract with Verizon, costing $20/month.

14.    Robison's S6 began overheating almost immediately. The problem was the most pronounced when an app was running while the phone was charging, like when using navigation or Pandora in the car. In an attempt to alleviate the heat, Robison would use his car's fans to cool his S6. Still, the phone would overheat. Robison took to removing the S6 from its Otterbox case just to keep the phone from reaching "scary hot" levels.

15.    Robison's S6 started shutting down from overheating. Eventually, it stopped turning on at all. Robison tried hard resetting, soft resetting, and other troubleshooting to

solve the problem. Nothing worked. Robison took his S6 to the store he bought it from, but they weren't able to help, either, or even pull any data from Robison's S6.

16.    Some days, Robison can manage to power on the phone for a few seconds; other days, it will not turn on no matter how many times he tries. Left with a "very expensive paperweight," Robison had to replace his phone in November 2016.

17.    Because the phone line Robison had for his S6 cannot be cancelled until May 25, 2017, Robison had to open a new phone line to purchase a new phone at full price. Robison continues to pay $20/month for a useless phone line as a result of his defective S6.

**The Samsung Defendants**

18.    Defendant Samsung Electronics America, Inc. ("Samsung America") is a New York corporation organized and existing under the laws of the State of New York and registered with the California Secretary of State to conduct business in California.

19.    Defendant Samsung Electronics Co., Ltd. ("Samsung Ltd.") is a Korean corporation organized and existing under the laws of the Republic of Korea, with its principal place of business located at 129 Samsung-Ro, Yeongtong-Gu, Suwon-si, Gyeonggi-do, Korea. Samsung Ltd. is the parent company of Samsung America (a wholly-owned subsidiary), and the entities are collectively referred to as "Samsung."

20.    Samsung is primarily a consumer electronics company. It makes computer monitors, TVs, mobile devices, and home appliances, among other items. Samsung considers itself to be "at the forefront of mobile lifestyle innovation with consumer-friendly products such as the premium 'GALAXY' series."[4]

21.    At all times relevant, Samsung America and Samsung Ltd. were the agents, servants, employees, partners, aiders and abettors, and/or joint venturers of each other and were at all times operating and acting within the purpose and scope of said agency, service, employment, partnership, enterprise, and/or joint venture, and each Defendant has ratified

---

[4] Samsung Electronics, 2015 Business Report, p. 4, available at: http://www.samsung.com/us/aboutsamsung/investor_relations/financial_information/downloads/2015/2015_business_quarter04.pdf.

and approved the acts of each of the remaining Samsung entities. Each of the Samsung entities aided and abetted, encouraged, and rendered substantial assistance to the other Samsung entities in breaching their obligations to Plaintiffs and the class. In taking action to aid and abet and substantially assist the commission of these wrongful acts and other wrongdoings complained of, each of the Samsung entities acted with an awareness of his/her/its primary wrongdoing and realized that his/her/its conduct would substantially assist the accomplishment of the wrongful conduct.

22. Samsung designs, manufactures, markets, distributes, and sells mobile phones and devices in California, Maryland, and multiple other locations in the U.S. and worldwide. Samsung or its agents designed, manufactured, and marketed the Class Phones. Samsung also developed and disseminated the owner's manuals and warranty booklets, advertisements, and other promotional materials relating to the Class Phones.

## **JURISDICTION AND VENUE**

23. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d). The matter in controversy exceeds $5,000,000 exclusive of interest and costs, and this matter is a class action in which certain class members are citizens of States other than each Defendant's state of citizenship. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

24. This Court has personal jurisdiction over Plaintiff Hernandez because Hernandez resides in California and because he consents to the Court's jurisdiction.

25. This Court has personal jurisdiction over Plaintiff Robison because he consents to the Court's jurisdiction.

26. This Court has personal jurisdiction over Samsung Electronics America, Inc. pursuant to 18 U.S.C. § 1965(b) & (d), and/or California Code of Civil Procedure section 410.10. This Court has personal jurisdiction over Samsung Electronics America, Inc. because it has minimum contacts with the United States, this judicial district, and this State, and intentionally availed itself of the laws of the United States and this State by marketing, distributing, testing, and/or selling Class Phones in this State and District, among other commercial activity.

Further, Samsung Media Solutions Center America, a division of Samsung Electronics America, Inc., is based in Mountain View, California; Samsung Semiconductor, Inc., the second largest semiconductor manufacturer in the world, is a wholly owned subsidiary of Samsung Electronics, America, Inc. and is headquartered in San Jose, California. At least in part because of Samsung's misconduct as alleged in this Complaint, Class Phones ended up in the hands of Californians across the state.

27.     This Court has personal jurisdiction over Samsung Electronics Co., Ltd., pursuant to 18 U.S.C. § 1965(b) & (d), and/or California Code of Civil Procedure section 410.10. This Court has personal jurisdiction over Samsung Electronics Co., Ltd., because it has minimum contacts with the United States, this judicial district, and this State, including, but not limited to: Samsung Strategy and Innovation Center, a global organization within Samsung's Device Solutions division, is headquartered in Menlo Park, California; Samsung Catalyst Fund is headquartered in Menlo Park, California; Samsung Information Systems America is headquartered in San Jose, California;  Samsung Open Innovation Center is located in Palo Alto, California; Samsung Research America is headquartered in Mountain View, California; and Samsung International, Inc. is headquartered in San Diego, California. Further, according to a Samsung press release, the "great successes" of the labs housed at the Samsung Media Solutions Center in Mountain View, California "benefit Samsung's vast portfolio of mobile, visual display, home appliance, wearable and audio and stereo products."[5]

28.     Venue is proper in this Court under 28 U.S.C. § 1391 because Samsung advertises, markets, distributes, and sells a substantial number of Class Phones and other consumer goods in this District. Furthermore, a substantial part of the events alleged in this Complaint giving rise to Plaintiffs and the Class's claims, including the false and misleading advertising alleged herein, occurred in, emanated from, and/or were directed from this

---

[5] "Research at the Core of SAMSUNG Research America's New Mountain View Campus," SAMSUNG Newsroom (Sept. 1, 2015) available at: https://news.SAMSUNG.com/global/research-at-the-core-of-SAMSUNG-research-americas-new-mountain-view-campus.

CLASS ACTION COMPLAINT

District. Venue is also proper in this Court because Samsung caused harm to Class Members residing in this District.

## SPECIFIC FACTUAL ALLEGATIONS

### Samsung competes in the global smartphone market

29.    Over a billion smartphones are sold every year, generating a global revenue of almost half a trillion dollars. Accordingly, competition among brands for market share is fierce.

30.    Samsung has been the dominant player in the smartphone market in recent years, beating out Apple and all other brands through the third quarter of 2016.[6]

31.    Samsung makes Android-based mobile phones and sells its devices across the world. Samsung, like many other smartphone makers, has a "flagship" product line in its Galaxy S series. Flagship phones are premium devices, typically retailing for more than $500. These phones often define the brand to consumers, such as the RAZR by Motorola of years past.

32.    New flagships are released every year, like clockwork. Each year's model is more chock full of features than the last: more megapixels in the camera, longer battery life, higher screen resolution, more memory—all crammed into a slimmer phone.

---

[6] http://www.idc.com/promo/smartphone-market-share/vendor.

CLASS ACTION COMPLAINT

33.     Some of the other Android flagships the Galaxy S series competes against include the HTC M series, Google's Nexus phones, Moto X by Motorola, and LG's G series. Samsung also competes with Apple's iPhone for market share, though the iPhone is not Android-based.



*Ad by Samsung touting its battery compared to the iPhone*

34.     Despite the high prices, consumers are expected to replace their smartphones regularly. While two-year service contracts that permit a free upgrade with each renewal are no longer as commonplace as they were when cell phones debuted, many people still choose to replace their smartphone every other year. Smartphone manufacturers sometimes "encourage" this behavior by phasing out support for older models—where "older" can mean released as recently as 18 months ago.[7]

35.     The first Galaxy phone was released in June 2010. Since then, the phone has followed the typical smartphone release cycle: a new flagship model approximately once a year, with variations on the flagship released in the interim. For the S series, these variations include "Edge," "Edge+," and "Active." Also part of the Galaxy product line is the Galaxy Note, a supersized smartphone sometimes described as a "phablet" due to its tablet-like dimensions.

36.     In addition to new features, with each iteration of smartphone, significant increases in processing power are achieved. The Galaxy S2, first released in May of 2011, could perform less than 100 million floating point operations per second. The Galaxy S7, released less than five years later in March of 2016, has more than five times the computational power

---

[7] http://www.dailyo.in/technology/smartphones-long-lasting-upgrade-nokia-iphone-android-google-nexus/story/1/11957.html.

CLASS ACTION COMPLAINT

of the S2.

37.    The hardware upgrades contained in each iteration of smart phone require commensurate increases the battery capacity to maintain an acceptable consumer experience. On information and belief, since at least the Galaxy S6, Samsung has been designing or "providing the target for battery specifications" for the Galaxy S and Note model smartphones with high energy density without taking appropriate measures to ensure the safety of such batteries.

38.    The Class Phones all pose a risk of overheating, fire and explosion as they were designed, engineered, developed, manufactured, produced and/or assembled in a substantially similar manner to the defective and dangerous batteries used in the Galaxy Note7. None of the Class Phones have been recalled by Samsung other than the Galaxy Note7.

**Consumers repeatedly complain about overheating and battery life problems with Samsung's Galaxy products**

39.    Samsung has continued its practice of designing and manufacturing dangerous devices despite a long history of consumers lodging complaints with the Consumer Product Safety Commission about the Class Phones and their predecessors overheating, causing burns, catching fire, and exploding since as early as 2011.

40.    Some of the most troubling examples of reports identifying such incidents are listed below (excluding reports about the Galaxy Note7):

- On January 20, 2014, a consumer reported that a Samsung Galaxy S3 and charging cord became "visibly burned and melted." The consumer reported "[i]t looks like it had been on fire momentarily." This happened while the device was charging. CPSC Report No. 20140120-0DFDC-2147448018.

- On May 1, 2014, a consumer reported that a Galaxy S4 became "extremely hot" and burned the consumer's son. The consumer contacted Samsung about the incident, but they had not called back at the time of the report. The consumer reported he felt the "phone is dangerous." CPSC Report No. 20140501-C2DA6-2147444903.

- On September 29, 2014, a consumer reported that a Galaxy S4 began smoking and the "battery caught on fire," damaging the consumer's floor. The consumer reported the incident directly to Samsung. CPSC Report No. 20140929-BD00A-1431381.

- On October 22, 2014, a consumer reported that a Galaxy S3 phone "made a sizzling sound" and "the front of the phone flew off the table and the battery expanded to 3 times its normal size" before smoking and catching fire. On the Samsung ASC Service Repair Statement received by the consumer, Samsung listed the phone's symptom as "PHONE IS WARM WHILE CHARGING". The consumer "fe[lt] like [Samsung is] covering this whole incident up." CPSC Report No. 20141022-2E8CF-2147439815.

- On November 2, 2014, a consumer reported that a Galaxy S4 began burning in the consumer's pocket. When the consumer pulled the phone out of his or her pocket, it seared the consumer's skin. The consumer further reported "[t]he temperature was equivalent to pulling something out of the oven after baking or boiling water and dunking your hand in it." CPSC Report No. 20141102-D37FA-2147439274.

- On December 30, 2014, a consumer reported that a Galaxy S4 "literally melted to [the consumer's] counter" while charging. The consumer further reported that "[t]he area around the charging port was black and melted." CPSC Report No. 20141230-C86A9-2147437158.

- On September 19, 2015, a consumer reported that the Samsung charging device for a Galaxy S6 was "overheating excessively under normal use." The consumer further reported that the heating was "severe" enough to burn the consumer. CPSC Report No. 20150919-9088D- 2147428266.

- On December 29, 2015, a consumer reported that a Samsung phone charger for a "Newer Samsung Galaxy" had "almost started on fire." The "phone was red hot," the tip of the charger was black, and the phone was "completely toast." CPSC

Report No. 20151229-96F83-2147425364.

- On January 18, 2016, a consumer reported that a Galaxy S6 Edge became "extremely hot to touch," and developed a crack in the screen. CPSC Report No. 20160118-B87EB-2147424570.

- On January 23, 2016, a consumer reported that a Galaxy S6 began emitting a "strange smell," and that the Samsung charger was "warped, melted, and discolored." The consumer further reported that the phone was "extremely hot" to the point it would have "burned a small child." The incident occurred while the phone was charging. CPSC Report No. 20160123-F8845-2147424397.

- On January 14, 2016, a consumer reported that a charging device for a Galaxy S4 got "extremely hot and started to melt." CPSC Report No. 20160114-AC115-1545877.

- On March 21, 2016, a consumer reported that a Samsung charging device for a Galaxy S6 "caught on fire and melted." CPSC Report No. 20160321-83C90-2147420788.

- On June 21, 2016, a consumer reported that while charging, a Samsung Galaxy S6 Active "exploded and caught on fire," and "the fire burnt through [the consumer's] sheets [and] mattress" (see below). CPSC Report No. 20160620-2E2C7-2147417652.



- On September 10, 2016, a consumer reported they had placed their S7 Edge in

their "right front pocket" and "shortly thereafter he noticed his phone whistling, screeching, and vibrating, as well as smoke coming from his pocket." According to the report, the consumer suffered burns to his hand when he tried to remove the phone from his pocket and that, "without warning the S7 Edge exploded and caught fire" causing second and third degree burns. CPSC Report No. 20160910-B6468-2147414311.

- On September 16, 2016, an apparent retailer (ostensibly misidentified as a consumer) notes that a consumer had two Samsung Note 5 devices overheat. "The original [Note 5] partially melted," this one is a refurbish, the consumer stated that "the [replacement Note 5] overheated in his pocket." CPSC Report No. 20160916-F580E-1594918.

- On September 16, 2016, a consumer reported that the battery of a Samsung Galaxy S5 is "bulging" and the phone is "warm to touch." The consumer further reported that Samsung refused to do anything other than sell the customer a new battery because the phone "had not yet exploded." CPSC Report No. 20160916-13A98-2147414102.

- On September 16, 2016, a consumer reported that a Samsung Galaxy S6 Active "burned up while charging via a Samsung charger." The incident set off smoke alarms, filled the customer's bedroom with smoke, charred curtains and bedding, and burned through the hardcover of a book. The consumer reported that she contacted Samsung about the incident, and that Samsung gave her the "runaround." CPSC Report No. 20160916-1BB3F-2147414093.

- On October 1, 2016, a consumer reported their Samsung Galaxy S7 phone was "getting extremely and dangerously hot." After being told by Samsung that the phone was not affected by the Note7 recall, and that the phone would not be replaced, the problem worsened until "the phone got so hot that it melted into the [] case." CPSC Report No. 20161001-BE159-2147412447.

1    • On November 7, 2016, a consumer reported that a Samsung Galaxy S4 caught

2    fire and exploded in their child's bedroom, "it sounded like an explosion...like a

3    bomb went off[,] smoke alarms started due to fire[,] absolutely terrible and did

4    lots of damage" (see below). CPSC Report No. 20161107-9B849-2147411034



13    • On December 18, 2016, a consumer reported that a Samsung Galaxy S5 starting

14    emitting white smoke, and ultimately caught on fire an exploded inside their

15    home, causing damage to the home and personal property. CPSC Report No.

16    20161218-D12DC-2147409191.

17    41.    Similar non-CPSC reports exist as related to the Galaxy S6 Edge+[8] and Galaxy S7

18    Active[9] phones, as demonstrated in the below image of a Galaxy S6 Edge+.



---

27    [8] https://www.technobuffalo.com/2016/04/27/galaxy-s6-edge-plus-fire/

28    [9] http://bgr.com/2016/10/12/note-7-recall-samsung-galaxy-s7-active-battery-swelling-burst/

42.    Samsung was and is aware of these reports, and has acknowledged many of them by responding on the CPSC website. Beginning in July of 2014, Samsung began issuing boilerplate responses to many of the above complaints, typically stating:

▼   Comments from the Manufacturer/Private Labeler

Comment from SAMSUNG TELECOM AMERICA (STA) 7/2/2014
Samsung encourages consumers with any concerns about our products to contact us directly at pl@sta.samsung.com or by phone at 888-987-4357. We follow up on all incidents reported about our products on the CPSC's database when contact information is available to us.

43.    As stated in many of the above complaints, Samsung's customer service and repair representatives appeared to intentionally minimize or disregard consumer's complaints, such as seen below, where the identification of the symptom leading to the repair is listed as "PHONE IS WARM WHILE CHARGING" rather than stating the battery caught fire and exploded.[10]

Samsung ASC Service Repair Statement         ELECTRONICS

**Bill To**
█████████████

**Ship To**
█████████████

Service Ticket: █████████
ASC Claim Num ██████
Receipt Date: 10/06/2014 15:13:52

Warranty Status:    Labor Out of warranty
                    Parts Out of warranty

**Product Description**

Model Code: SPH-L710RWBSPR        Serial Number: █████████

**Repair Summary**

Symptom: PHONE IS WARM WHILE CHARGING        Repair Description:    1 Replaced LCD
                                                                     2 Replaced Cosmetic
                                                                     3 Replaced Component
                                                                     4 Replaced PBA

| Repair Detail | Part # | Description | Qty | Price |
|---|---|---|---|---|
| 1 | GH82-06606B | A/S ASSY-PBA MAIN (IMEI);SPH-L710,SPR,ST | 1 | |
| 2 | GH97-13712B | MEA FRONT-OCTA LCD ASSY(SVC)_WHITE;SPH-L | 1 | |
| 3 | GH98-23281B | ASSY CASE-REAR;SPH-L710,SPR,CERAMIC WHIT | 1 | |
| 4 | GH98-23282B | ASSY COVER-BATT;SPH-L710,SPR,CERAMIC WHI | 1 | |
| 5 | GH59-12206B | MODULE-SPK_WHITE+EAR JACK;SPH-L710,GMP-1 | 1 | |
| 6 | Labor & Parts | Parts Replaced | | $ Free |

---

[10] See Consumer Complaint dated October 22, 2014, *supra*.

**Lithium ion batteries are inherently dangerous, and Samsung knowingly increased the risk of incendiary and explosive failure**

44.    Lithium ion batteries power the wirelessly connected world of the 21st century, including cellular phones, laptop computers, and even hybrid and fully electric vehicles.

45.    Despite their ubiquity, lithium ion batteries are inherently dangerous. John B. Goodenough, recognized as the creator of the lithium ion battery, has acknowledged that the "incendiary, if not explosive, consequences" of a short circuit of a lithium ion battery has been known to the scientific community since early experiments with lithium ion batteries in the 1970s.[11]

46.    At their most basic, lithium ion batteries contain a positive electrode, a negative electrode, a separator between the electrodes, and electrolyte. The positive electrode is called the cathode, and is typically made of a lithium metal oxide such as lithium cobalt oxide. The negative electrode is called the anode, and is typically a carbon material such as graphite.

47.    The purpose of a separator in a lithium ion battery is to promote the movement of ions from cathode to anode during charge and from anode to cathode during use (discharge), **and to electrically isolate the anode from the cathode to avoid an internal short-circuit**. Typically, the thinner the separator, the greater the life of the battery due to available volume for other components.

48.    Common separator materials such as those based on polyethylene and polypropylene can began melting and increasing the likelihood of short circuit failures at temperatures above 130° Celsius,[12] as is believed to be the case in the Note7 battery, which appears to contain a separator with a base layer of polyethylene.[13] Internal short circuiting is a

---

[11] Goodenough, John B. and Park, Kyu-Sung, "The Li-Ion Rechargeable Battery: A Perspective" Journal of the American Chemical Society, January 7, 2013.

[12] Finegan, Donal, et al. "*In-operando* High-Speed Tomography of Lithium-Ion Batteries During Thermal Runaway." Nature Communications, April 28, 2015.

[13] "Galaxy Note7 Battery Autopsy and Analysis," available at: http://www.dreamweaverintl.com/uploads/5/7/8/8/57886015/galaxy_note_7_battery_autopsy_and_analysis.pdf.

CLASS ACTION COMPLAINT

major safety concern of lithium ion batteries and cannot be prevented by mechanical or electrical safety devices.[14]  As such, devices that rely on lithium ion batteries need to be designed to ensure the battery design and expected operation will not create a risk of internal short circuit or other circumstances that can initiate a "thermal runaway" event, where there is exothermic decomposition of battery components and a rise in battery temperature that will ultimately cause "a complete depletion of reactants" and result in a "catastrophic failure" such as "fires and explosions".[15]

49.    Samsung originally claimed that the Note7 battery issues were limited to devices with batteries manufactured by Samsung affiliate Samsung SDI, which supplied about 65% of the batteries used by the Galaxy Note7. Ultimately, Samsung conceded that devices with batteries manufactured by Amperex Technology Limited (ATL) were affected as well. The third-party testing and analysis performed by UL (formerly Underwriters Laboratories) after the Note7 recall confirmed that both batteries manufactured for the Note7 suffered from several design and manufacturing defects that led to the internal short circuit failures that plagued the Note7. Samsung failed to note these defects during the quality assurance process.

50.    According to UL, when the separator is too thin it can lead to poorer protection against internal short circuits and reduced tolerance to manufacturing defects that may damage or puncture the separator.[16] UL determined that the thinly designed separator between the anode and the cathode and high volumetric energy density was common the Note7 batteries made by both manufacturers, and contributed to their respective failure, as seen below.

**B.    Battery design:**
- **Thinner separator could lead to poorer protection and reduced tolerance to manufacturing defects**
- **Higher energy density in general can exacerbate the severity of a battery failure**

---

[14] Finegan, *supra,* note 12.
[15] *Id*.
[16] "Failure Analysis of Samsung Note7", January 23, 2017 Samsung Press Conference, https://news.samsung.com/global/wp-content/themes/sw_newsroom/download.php?post_id=82255&id=82253&meta_type=file

51.     On information and belief, the Class Phones all pose a risk of overheating, fire and explosion as they were designed, engineered, developed, manufactured, produced and/or assembled in a substantially similar manner to the Note7.

52.     The volumetric energy density is the amount of battery energy based on the volume of the battery. As lithium ion batteries exhibit higher energy density and faster charge, "the barrier to explosion is less and less."[17] According to UL, higher energy density "can exacerbate the severity of battery failure."

53.     The rise of quick charging technology also increases likelihood of battery failure. The higher level of current required for quick charging a lithium ion battery increases the temperature of the phone during charging and can prevent uniform plating of lithium that can lead to lithium dendrites spreading across the electrolytes within the battery until they reach the other electrode, causing an internal short circuit.[18]

54.     Samsung's has admitted that it "provide[s] the target for the battery specifications" for its devices.[19] Samsung's decision to design, produce, market, distribute, and sell devices with such dangerous designs increased the risk and degree of phone failures. As described above, Samsung's responses to the myriad complaints about the Class Phones demonstrate Samsung's knowledge of the extent and severity of the issues facing the Class Phones. At a minimum, given the known susceptibility of Class Phones, Samsung should have provided notice to consumers and augmented its quality assurance efforts to ensure that manufacturing defects were minimized. The Note7 fiasco and the third-party reports identifying pervasive manufacturing defects from multiple suppliers demonstrate that Samsung had failed to take even these steps.

---

[17] "Samsung's Woe's Highlight Explosive Limits of Lithium Batteries," http://www.reuters.com/article/us-tech-batteries-problems-idUSKCN12D05M.
[18] "Lithium-Ion Battery Inventor Introduces Fast-Charging, Noncombustible Batteries, " http://engr.utexas.edu/news/8203-goodenough-batteries.
[19] Samsung Press Conference, January 23, 2017, https://www.youtube.com/watch?v=Iu18CykEH9o

**<u>Samsung conceals the dangers posed by its Galaxy phones</u>**

55.     The Class Phones are unsafe for their intended use by reason of defects in their design, engineering, development, manufacturing, testing, production, and/or assembly, such that they cannot safely serve their purpose, but can instead expose the public and Plaintiffs to serious injury.

56.     Despite knowledge of the overheating problem existing across multiple models and generations of Samsung phones, Samsung concealed from consumers the risks of fire, explosion and overheating.

57.     Samsung makes no mention of these widely reported and recognized risks in the sales and marketing of its phones. Rather than mention the fragility and susceptibility to manufacturing defects of phones with ultrathin separators, Samsung instead focused on the durability of such phones. Rather than mention the risks of coupling a thin separator with high current charging technology, Samsung hailed its devices shortened charging times. Ultimately, Samsung led consumers to believe that Samsung's lithium-ion batteries in the Class Phones are far safer and more durable than they are.

58.     Samsung marketed the S6 Active as indestructible, innovative, and better than ever. According to Samsung: "AT&T is bringing its customers the toughest and most advanced member of the Galaxy S family. The Samsung Galaxy S6 Active . . . is designed with your active lifestyle in mind. It gives you the durability you want while boasting a sleek, lightweight design and all of the innovation the Galaxy S6 has to offer."

59.     However, Samsung here failed to disclose the risks of bending or flexing such "high durability" phones, which can lead to physical damage of the battery which, in turn, can cause thermal runaway events.

60.     Further, it said of the S6 Active, "Samsung adheres to its notoriously strict quality control policy. Each product undergoes intense durability testing such as drop tests, bending test and performance testing among many other steps Samsung takes to ensure the highest quality products. By fusing together innovation with durability, Samsung is able to

CLASS ACTION COMPLAINT

provide the level of quality consumers expect from Samsung."[20]

61.     Despite the known risks of the Class Phones, Samsung also incorporated and marketed faster charging times for several of the Class Phones, stating the batteries charge "in no time."[21] Rather than take steps to ensure its phones didn't suffer potential short circuits from lithium dendrite formation due to fast charging, it actually continued to make the separators thinner, increasing the risk.

62.     Samsung attempted to conceal the scope of the Note7 problem during its recall. Among other tactics, it reportedly offered one Chinese customer $900 not to publicize a video of his Note7 overheating and sparking.[22] This echoes previous attempts by Samsung to takedown a December 2013 YouTube video discussing an overheating Galaxy S4.[23]

63.     Samsung also issued copyright claims to YouTube in order to prevent parody videos posted by the public of Note7 explosions from being displayed on its site.[24]

64.     Samsung continues its practice of minimizing the risks of its devices, including the Class Phones, and has not warned consumers of the inherent risks of these devices.

65.     In fact, on October 12, 2016, Samsung reportedly sent push notifications directly to some customers' smartphones (including the Class Phones) to inform them that their phones had not been affected by the Note7 recall and that they should continue to use them normally. Accordingly, Samsung continues to fail to disclose that the Class Phones have similar issues to the Note7.

## CLASS ACTION ALLEGATIONS

66.     Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of themselves and all others similarly situated.  Plaintiffs seek to

---

[20] See https://news.samsung.com/global/forming-glass-forging-metal-the-art-of-craftsmanship-in-the-galaxy-s6.

[21] http://web.archive.org/web/20160602052920/http:/www.samsung.com/us/explore/galaxy-s7-features-and-specs/.

[22] https://www.nytimes.com/2016/10/19/business/samsung-galaxy-note7-china-test.html.

[23] https://www.youtube.com/watch?v=2QHd-_qncEU.

[24] http://www.bbc.com/news/technology-37713939.

1    represent the following Classes (collectively referred to as "the Class" unless differentiation is

2    required):

3                              **California Class**

4                    All persons or entities residing in California who purchased or owned,
                     in the State of California, a Class Phone.[25]
5

6                              **Maryland Class**

7                    All persons or entities residing in Maryland who purchased or owned,
                     in the State of Maryland, a Class Phone.
8

9                              **Exclusions**

10                   Expressly excluded from the Classes are Defendants and their
                     subsidiaries, affiliates, officers, directors, and employees; and Class
11                   Counsel and their employees.

12                   Also excluded are any individuals bringing personal injury claims
                     related to the Class Phones.

13           67.    Certification of Plaintiffs' claims for classwide treatment is appropriate because

14   Plaintiffs can prove the elements of their claims on a classwide basis using the same evidence

15   as would be used to prove those elements on an individual basis. The proposed Classes are

16   appropriate under Rule 23(a), 23(b), 23(b)(2), or 23(b)(3).  The proposed Classes are made up

17   of thousands of persons dispersed throughout California and Maryland, rendering joinder

18   impracticable. The precise number and identity of Class Members are unknown to Plaintiffs at

19   this time, but can be obtained from Samsung's internal records.

20           68.    There are questions of law and fact common to the members of the Class, which

21   predominate over questions affecting only individual Class members, including:

22                    •    Whether Samsung knew about the defects in the Class Phones;

23                    •    When Samsung knew about the defects in the Class Phones;

24                    •    Whether Samsung concealed any defects in the Class Phones;

25

26   _____

27   [25] The Class Phones are the Galaxy S6, S6 Edge, S6 Edge+, S6 Active, S7, S7 Edge, S7 Active,
28   Note5, and Note7. See ¶ 8.

- Whether Samsung violated the unlawful prong of California's Unfair Competition Law (UCL) by its violation of the CLRA;
- Whether Samsung's omissions were likely to deceive a reasonable person in violation of the UCL;
- Whether Samsung adequately investigated reports of problems with the Class Phones;
- Whether Samsung's business practices, including the manufacture and sale of phones with a risk of overheating, explosion and fire—which Samsung failed to properly investigate, disclose, or remedy—offend established public policy and cause harm to consumers that greatly outweighs any benefits associated with those practices;
- Whether Samsung was unjustly enriched at the expense of Plaintiffs and the Class;
- Whether Samsung's publicity and advertising regarding the durability, functionality, battery life and/or performance of the Class Phones was misleading;
- Whether Samsung has engaged in unlawful, unfair or fraudulent business practices;
- Whether Samsung's conduct violated the California Consumer Legal Remedies Act;
- Whether Samsung's conduct violated California Business and Professions Code § 17200, *et seq.*;
- Whether Samsung's conduct violated the Maryland Consumer Protection Act;
- Whether Samsung's unlawful, unfair, or deceptive practices have harmed Plaintiff and the class members;
- Whether Plaintiffs and the members of the Class are entitled to equitable or injunctive relief; and
- Whether Plaintiffs and the members of the Class are entitled to damages, including punitive damages.

CLASS ACTION COMPLAINT

69.     Plaintiffs are members of the Class and Plaintiffs' claims are typical of the claims of the Class.

70.     Plaintiffs are willing and prepared to serve the Court and the proposed Class in a representative capacity. Plaintiffs will fairly and adequately protect the interests of the Class and has no interests adverse to or which conflict with the interests of the other members of the Class.

71.     Plaintiffs have engaged the services of counsel who are experienced in complex class litigation, will adequately prosecute this action, and will assert and protect the rights of and otherwise represent the Plaintiffs and absent Class members.

72.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistency and varying adjudications, establishing incompatible standards of conduct for Samsung.

73.     Samsung has acted on grounds generally applicable to the Class, thereby making relief with respect to the members of the Class as a whole appropriate.

74.     A class action is superior to other available means for the fair and efficient adjudication of this controversy. Prosecution of the Complaint as a class action will provide redress for individual claims too small to support the expense of complex litigation and reduce the possibility of repetitious litigation.

## CLAIMS ON BEHALF OF THE CALIFORNIA CLASS

### FIRST CAUSE OF ACTION

### Violation of the Unfair Competition Law

### (Cal. Bus. & Prof. Code § 17200 *et seq.*)

75.     Plaintiff Tomas Hernandez ("Plaintiff," for purposes of all California claims) re-alleges and incorporates by reference each of the paragraphs set forth above as though fully set forth herein.

76.     Plaintiff has standing to bring this action under the UCL because he has suffered injury in fact as a result of Samsung's conduct and has lost money through his purchase of or payment for one or more Class Phones, which Plaintiff would not have purchased or paid for

CLASS ACTION COMPLAINT

had Samsung not concealed the risks of overheating, fire, and explosion described herein.

77.    Samsung's omissions, nondisclosures, concealments, and half-truths regarding the Class Phones' risk of overheating, fire, and explosion, performance, battery life, and safety in its advertising, public statements, and marketing were material factors in inducing Plaintiff and the Class to purchase their Class Phones.

78.    Samsung's omissions, nondisclosures, concealments, and half-truths constitute unfair, unlawful, and/or fraudulent conduct under the UCL.

79.    Samsung's business practices, including the manufacture and sale of phones with a risk of overheating, fire, and explosion—which Samsung failed to adequately investigate, remedy, and disclose—offend established public policy and cause harm to consumers that greatly outweighs any benefits associated with those practices, violating the unfair prong of the UCL.

80.    Samsung's conduct further violated the unlawful prong of the UCL, which provides that "unfair competition shall mean and include any unlawful, unfair or deceptive business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter I (commencing with Section 17500) as Part 3 of Division 7 of the Business and Professions Code."

81.    Samsung has violated and continues to violate section 17200's prohibition against engaging in "unlawful" business acts or practices, by, among other things:

- Violating the CLRA, Civil Code § 1750, *et seq.*; and
- Violating Business & Professions Code § 17500, *et seq.*

82.    As a result of Samsung's unfair, unlawful, and/or fraudulent business acts and practices, Plaintiff and the Class suffered injury in fact and lost money and/or property. Each class member suffered harm when he or she was (1) unable to use a Class Phone, particularly while still paying for cellular service; (2) required to pay for replacement phones or continued service for phones that no longer worked properly or were unsafe; (3) required to pay a purchase price for their Class Phones that they never would have purchased if the true facts were known; or (4) paid a price in excess of what a Class member would have paid if Samsung

had accurately disclosed the Class Phones' characteristics and in the form of decreased resale value of the Phones.

83.    Plaintiff and the Class are entitled to full restitution and disgorgement of the profits from Defendants' unlawful business practices.

84.    Plaintiff and the Class also seek an order enjoining Samsung from continuing their unlawful business practices and from continuing such conduct in the future.

## SECOND CAUSE OF ACTION

### Concealment

85.    Plaintiff re-alleges and incorporates by reference the allegations set forth above.

86.    At all times relevant, Samsung was and is under a duty to communicate with Plaintiff and the Class in good faith and to provide to Plaintiff and the Class all material facts within Samsung's knowledge.

87.    Samsung deceived Plaintiff and the Class by concealing from them the true facts about the Class Phones that Samsung was obligated to disclose. As set forth above, Samsung knew about the problems with the Class Phones' safety—including specifically the risk of overheating, fire, or explosion—performance, and battery life, but concealed those facts from Plaintiff and the Class.

88.    Samsung knew that these omissions were material and that Plaintiff and the Class would rely on these omissions to their detriment. Plaintiff and the Class did in fact rely on these omissions such that had they known the true facts, they would have acted differently.

89.    As a result of the deceit by concealment by Samsung, Plaintiff and the Class suffered the injuries and damages set forth herein, including but not limited to: paying more for the Class Phones due to Samsung's material omissions than they would have if they knew about the Class Phones' defective and/or dangerous condition, costs related to purchasing replacement phones, costs related to attempted diagnosis or repair of the Class Phones, costs related to lost data on the Class Phones as a result of failure, including attempts to retrieve lost data, costs related to buying replacement phones, costs related to unusable cellular phone service tied to use of the Class Phones, and damage to personal and real property as a result of

a failure of the Class Phones.

## THIRD CAUSE OF ACTION

### Violation of the Consumer Legal Remedies Act

### Cal. Civ. Code § 1750, *et seq*.

90.     Plaintiff re-alleges and incorporates by reference the allegations set forth above.

91.     The CLRA was enacted to protect consumers against unfair and deceptive business practices. It extends to transactions that are intended to result, or which have resulted, in the sale of goods or services to consumers. Samsung's acts, omissions, representations and practices as described herein fall within the CLRA.

92.     Plaintiff and the other Class members are consumers within the meaning of Cal. Civ. Code § 1761(d).

93.     The Class Phones are "goods" as defined by Cal. Civ. Code § 1761(a).

94.     Samsung's acts, omissions, misrepresentations, and practices were and are likely to deceive consumers. By misrepresenting the safety and performance of the Class Phones, Samsung violated the CLRA. Samsung had exclusive knowledge of undisclosed material facts, namely, that their Galaxy series was defective and/or dangerous, and withheld that knowledge from Plaintiff and the other Class members.

95.     Samsung's acts, omissions, misrepresentations, and practices alleged herein violated the following provisions of the CLRA, Civil Code § 1700, which provides, in relevant part, that:

(a)     The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful:

(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have . . .

(7) Representing that goods or services are of a particular standard, quality, or grade . . . if they are of another.

(14) Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law.

(16) Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

96.    The acts and practices by Samsung, as alleged herein, constituted and constitute unlawful methods of competition, unfair, or deceptive acts undertaken in a transaction which resulted in the sale of goods to consumers including, but in no way limited to, Samsung's failure to disclose that the Class Phones were prone to overheating, fire, or explosion.

97.    Samsung engaged in deceptive acts and business practices by, among other things: (a) promoting the Class Phones as durable, rather than mentioning the fragility and susceptibility to manufacturing defects of phones with ultrathin separators; (b) hailing its devices shorted charging times, rather than mentioning the risks of coupling a thin separator with high current charging technology; (c) representing the Class Phones as safe when Samsung knew of the associated risk of overheating, fire, and explosion; (d) leading consumers to believe that the Class Phones are far safer and more durable than they are; (e) failing to properly investigate, mitigate, and disclose the problems associated with the Class Phones; and (f) continuing to release new and defective Galaxy S and Note models, and continuing to sell Class Phones, while the number of consumer reports of fires and explosions grows ever larger.

98.    Samsung knew, or at the very least should have known, that the Class Phones were unsafe and inappropriate for consumer use.

99.    Samsung's deceptive acts and business practices induced Plaintiff and the other Class members to purchase Class Phones. But for these deceptive acts and business practices, Plaintiff and the other class members would not have purchased the Class Phones, or would have purchased the Phones at a lower price.

100.    As a direct and proximate result of Samsung's violations of the CLRA, Plaintiff and the Class have been injured by, including but not limited to, the following:

(a)    the infringement of their legal rights as a result of being subjected to the

common course of fraudulent conduct alleged herein;

(b)    being induced to purchase the Class Phones, which they would not have done but for Samsung's acts, omissions, practices, and nondisclosures as alleged herein (in violation of the CLRA, California's False Advertising Law, and the UCL);

(c)    being induced to rely on Samsung's fraudulent, deceptive, and intentional omissions to their detriment; and

(d)    unknowingly being subjected to fraudulent concealment and deceit as a result of Samsung's conduct.

101.    As the result of Samsung's violation of the CLRA, Plaintiff and the other Class members are, or will be, entitled to compensatory and exemplary damages, an order enjoining Samsung from continuing the unlawful practices described herein, a declaration that Samsung's conduct violated the CLRA, attorneys' fees, and the costs of litigation.

102.    Pursuant to Civil Code § 1782, concurrently with the filing of this Complaint, Plaintiff will provide notification to Samsung in writing by certified mail pursuant to Section 1782 and demand that Samsung's Section 1770 violations be corrected. If Samsung fails to rectify or fails to agree to rectify the problems associated with the action detailed above within 30 days of the date of written notice pursuant to Civil Code § 1782, Plaintiff will amend this Complaint to add claims for actual, punitive, and statutory damages, as appropriate in accordance with Civil Code § 1782(a) & (d).

## FOURTH CAUSE OF ACTION

### Unjust Enrichment

103.    Plaintiff re-alleges and incorporates by reference the allegations set forth above.

104.    As a result of Samsung's wrongful acts and omissions concerning the safety, performance, and battery life of the Class Phones, as described in this Complaint, Plaintiff and the Class were induced to purchase Samsung products.

105.    As a result of Samsung's omissions, Samsung charged a higher price for the Class Phones than their true value, and Samsung derived substantial revenues due to Plaintiff and the Class purchasing Galaxy products.

106.    In addition, Samsung saved on the substantial cost of redesigning their Galaxy S and Note product lines to eliminate their tendency to overheat.

107.    Plaintiff and the Class have been damaged by Samsung's actions, and Samsung has been unjustly enriched thereby. Plaintiff and the Class are entitled to damages as a result of Samsung's unjust enrichment, including the disgorgement of all revenue received and costs saved by Defendants as a result of this conduct.

## CLAIMS ON BEHALF OF THE MARYLAND CLASS

### FIFTH CAUSE OF ACTION

### Violation of the Consumer Protection Act

### (Md. Code Com. Law § 13-101, *et seq.*)

108.    Plaintiff Greg Robison ("Plaintiff," for purposes of all Maryland claims) re-alleges and incorporates by reference the allegations set forth above.

109.    Plaintiffs, Samsung, and the Maryland Class are "persons" within the meaning of Md. Code Com. Law § 13-101(h). The Class Phones are "consumer goods" within the meaning of Md. Code Com. Law § 13-101(d); and Plaintiffs are "consumers" within the meaning of Md. Code Com. Law § 13-101(c).

110.    The Maryland Consumer Protection Act ("MCPA") provides that a person may not engage in any unfair or deceptive trade practice in the sale of any consumer good. Md. Code Com. Law § 13-303. Unfair or deceptive trade practices under the MCPA include, but are not limited to:

(1) False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers;

(2) Representation that:

(i) Consumer goods, consumer realty, or consumer services have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not have;

[ . . . ]

(iv) Consumer goods, consumer realty, or consumer services are of a particular

standard, quality, grade, style, or model which they are not;

(3) Failure to state a material fact if the failure deceives or tends to deceive;

[ . . . ]

(9) Deception, fraud, false pretense, false premise, misrepresentation, or knowing

concealment, suppression, or omission of any material fact with the intent that a

consumer rely on the same in connection with:

(i) The promotion or sale of any consumer goods, consumer realty, or consumer

service;

[ . . . ]

Md. Code Com. Law § 13-301.

111.    As described herein, Samsung participated in misleading, false, or deceptive acts

that violated the MCPA.

112.    In the course of its business, Samsung willfully failed to disclose and actively

concealed the defects in the Class Phones discussed herein and otherwise engaged in activities

with a tendency or capacity to deceive.

113.    Samsung also engaged in unlawful trade practices by employing deception,

deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or

omission of any material fact—including specifically facts pertaining to the safety,

performance, and battery life of the Class Phones—with the intent that others rely upon such

concealment, suppression, or omission, in connection with the sale of the Class Phones.

114.    Samsung knew since at least 2012 that its Galaxy product line was prone to

overheating and catching fire, but concealed this information from consumers.

115.    By misrepresenting the safety and performance of the Class Phones, Samsung

violated the MCPA. Samsung had exclusive knowledge of undisclosed material facts, namely,

that their Galaxy series was defective and/or dangerous, and withheld that knowledge from

Plaintiff and the other Class members.

116.    Samsung's unfair and deceptive business practices described herein have

directly, foreseeably, and proximately caused Plaintiffs and the Class actual damages.

117.    As a result of Samsung's violation of the MCPA, Plaintiff and the Class are entitled to damages and declaratory relief.

## SIXTH CAUSE OF ACTION

## Fraud by Omission

118.    Plaintiff re-alleges and incorporates by reference the allegations set forth above.

119.    At all times relevant, Samsung was and is under a duty to communicate with Plaintiff and the Class in good faith and to provide to Plaintiff and the Class all material facts within Samsung's knowledge.

120.    Samsung deceived Plaintiff and the Class by concealing from them the true facts concerning the Class Phones that Samsung was obligated to disclose. As set forth above, Samsung knew about the problems with the Class Phones' safety—including specifically the risk of overheating, fire, or explosion—performance, and battery life, but concealed those facts from Plaintiff and the Class.

121.    Samsung knew that these omissions were material and that Plaintiff and the Class would rely on these omissions to their detriment. Plaintiff and the Class did in fact rely on these omissions such that had they known the true facts, they would have acted differently.

122.    As a result of the deceit by concealment by Samsung, Plaintiff and the Class suffered the injuries and damages set forth above.

## SEVENTH CAUSE OF ACTION

## Unjust Enrichment

123.    Plaintiff re-alleges and incorporates by reference the allegations set forth above.

124.    As a result of Samsung's wrongful acts and omissions concerning the safety, performance, and battery life of the Class Phones, as described in this Complaint, Plaintiff and the Class were induced to purchase Samsung products.

125.    As a result of Samsung's omissions, Samsung charged a higher price for the Class

CLASS ACTION COMPLAINT

1    Phones than their true value, and Samsung derived substantial revenues due to Plaintiff and

2    the Class purchasing Galaxy products.

3        126.    In addition, Samsung saved on the substantial cost of redesigning their Galaxy S

4    and Note product lines to eliminate their tendency to overheat.

5        127.    Plaintiff and the Class have been damaged by Samsung's actions, and Samsung

6    has been unjustly enriched thereby. Plaintiff and the Class are entitled to damages as a result of

7    Samsung's unjust enrichment, including the disgorgement of all revenue received and costs

8    saved by Defendants as a result of this conduct.

9    <u>**PRAYER FOR RELIEF**</u>

10        WHEREFORE, Plaintiffs, on their own behalf and on behalf of the Class, pray for relief as

11    follows:

12    1.    An Order appointing Plaintiffs to represent the proposed California Class and

13        Maryland Class pursuant to Fed. R. Civ. P. 23(a) and designating their counsel as

14        Class Counsel;

15    2.    An Order enjoining Samsung from future violations of the CLRA, Md. Code Com. Law

16        § 13-101, *et seq.*, or Business & Professions Code § 17200, *et seq.*, as alleged herein;

17    3.    An Order awarding Plaintiffs and the Class restitution and/or disgorgement;

18    4.    An Order awarding Plaintiffs and the Class compensatory damages;

19    5.    An Order awarding Plaintiffs and the Class punitive damages;

20    6.    An Order awarding Plaintiffs attorney's fees, expert witness fees and other costs,

21        including pre-judgment and post-judgment interest thereon to the extent allowed

22        by law; and

23    7.    Such other relief as the Court deems proper.

24

25

26

27

28

1

## <u>DEMAND FOR JURY TRIAL</u>

2        Plaintiffs, on behalf of themselves and the proposed Class, hereby demand a trial by jury

3   as to all matters so triable.

4    Dated:  April 7, 2017                    CASEY GERRY SCHENK
                                             FRANCAVILLA BLATT & PENFIELD, LLP
5

6                                       By:   <u>/s/ David S. Casey, Jr.</u>
                                             DAVID S. CASEY, JR.
7                                            *dcasey@cglaw.com*

8                                            Attorneys for Plaintiffs and the Class

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT